UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HACENE DJEMIL, FATIHA DJEMIL, RANIA DJEMIL, and A.D., a minor, by and through his Guardian Ad Litem Fatiha Djemil,<br><br>Plaintiffs,<br>    v.<br><br>TESLA INC; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 3:21-cv-05251-DGE<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 36) |

## I    INTRODUCTION

This matter comes before the Court on Defendant Tesla Inc.'s ("Tesla") motion for summary judgment (Dkt. No. 36). For the reasons detailed herein, the Court GRANTS Tesla's motion in its entirety.

## II  BACKGROUND

Plaintiffs Hacene Djemil ("Hacene") and Fatiha Djemil and their two children Rania and A.D. (collectively "Plaintiffs") bring suit against Tesla for alleged design defects that purportedly caused an automobile accident. (*See generally* Dkt. No. 1.)

On February 16, 2020, Plaintiffs' 2018 Tesla Model X automobile ("Model X") crashed into a Subway restaurant in a retail complex in Woodland, Washington. (Dkt. No. 1 at 1–2; *see also* Dkt. No. 39 at 31–32.) Hacene was driving the Model X at the time of the accident. (*See* Dkt. No. 39 at 21.) The Djemils live in Portland and were returning to their home after a family trip to Seattle. (*Id.* at 19.) The family exited I-5 on their way back to Portland to stop at a Starbucks. (*Id.*) Hacene was driving the car through a parking lot just prior to the accident. (*Id.* at 30–31.) The parties dispute the exact cause of the accident, but Plaintiffs' Model X ultimately collided with the side of a Subway restaurant. (Dkt. No. 1 at 3.)

On April 7, 2021, Plaintiffs filed their lawsuit. (Dkt No. 1 at 1.) Plaintiffs allege the Model X suffered from design defects pursuant to Washington Revised Code § 7.72.030(2). (*See id.* at 17.) Plaintiffs specifically allege the Model X suffered from "sudden uncommanded acceleration" ("SUA"). (Dkt. No. 1 at 6.) Plaintiffs also argue and allege that certain collision mitigation features installed on Tesla vehicles did not operate correctly or were overridden by the SUA. (*See* Dkt. Nos. 1 at 14; 38 at 12–14.)

On February 14, 2023, Tesla filed its motion for summary judgment. (Dkt. No. 36.) Plaintiffs filed their response on March 6, 2023 (Dkt. No. 38), and Tesla filed a timely reply (Dkt. No. 40).

## III  DISCUSSION

**A. Legal Standard**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may meet this burden by showing the non-moving party has failed to provide evidence in support of their case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). In determining whether a genuine dispute of material fact exists, "[t]he deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017). Disputed facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," but irrelevant or inconsequential disputes will not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B. Design Defect Theories**

Design defects in Washington are subject to strict liability. Wash. Rev. Code § 7.72.030(2). To prevail on their claims of a design defect under Washington law, Plaintiffs must show "(1) a manufacturer's product (2) not reasonably safe as designed (3) causing harm to the plaintiff." *Pagnotta v. Beall Trailers of Oregon, Inc.*, 991 P.2d 728, 732 (Wash. Ct. App. 2000).

In determining whether a product is "not reasonably safe as designed," Washington courts rely on either the "risk utility" or "consumer expectation standard." *Id.* Under the consumer expectation standard, Plaintiffs must show the Model X's alleged design defects were "more dangerous than the ordinary consumer would expect." *Id.* Under Washington law, certain accidents in themselves may be sufficient to establish a design defect under the consumer expectation standard. *See Bombardi v. Pochel's Appliance & TV Co.*, 518 P.2d 202, 204 (Wash. Ct. App. 1973) ("[T]here are some accidents as to which there is common experience dictating that they do not ordinarily occur without a defect, and as to which the inference that a product is

defective should be permitted."). Circumstantial evidence may also be used to establish a design defect where the underlying product was destroyed or where plaintiffs otherwise lack access to direct evidence. *See Bich v. Gen. Elec. Co.*, 614 P.2d 1323, 1327 (Wash. Ct. App. 1980).

The purported design defect must also be the proximate cause of Plaintiffs' injuries. *See Bruns v. PACCAR, Inc.*, 890 P.2d 469, 476 (Wash. Ct. App. 1995). Plaintiffs must show the design defect was both the legal and factual cause of their alleged injuries. *Id.* "Factual causation exists when the injury would not have occurred but for the defendant's act; this requires a physical connection between an act and an injury. Legal causation rests on policy considerations as to how far the legal consequences of a defendant's act should extend." *Id.*

Tesla argues it is entitled to summary judgment because Plaintiffs have failed to advance any creditable evidence that would create a genuine dispute of material fact that the Model X suffered from a design defect. Specifically, Tesla argues Plaintiffs have not put forward any evidence establishing Plaintiffs' injuries were caused by a design defect. (Dkt. No. 36 at 7.) Plaintiffs advance two theories as to why the Model X suffered from a design defect: the SUA theory and the Collision Mitigation Features theory, but the Court finds they have not put forward evidence precluding the Court from granting summary judgment to Tesla under either theory.

      a. <u>SUA Theory</u>

The Court agrees with Tesla that Plaintiffs have failed to adduce evidence sufficient to create a genuine issue of material fact on the issue of whether the Model X experienced SUA.

SUA, according to Plaintiffs, is a defect "in which a Tesla vehicle accelerates to full power even though the driver reports that he or she did not command the acceleration by

1  pressing the accelerator pedal." (Dkt. No. 1 at 6.)  This defect has allegedly "manifested in every

2  Tesla model line to date at rates that far exceed historical rates for any other vehicles." (*Id.*)

3      To defeat summary judgment, Plaintiffs present evidence from their expert Mendel

4  Singer that Tesla vehicles experience a statistically higher rate of SUA than other vehicles. (*See*

5  Dkt. No. 39 at 413.)  Plaintiffs also offer testimony from Hacene, who insists he pressed on the

6  brake pedal, not the accelerator. (*See id.* at 32, 34–36.)  Additionally, Plaintiffs challenge the

7  reliability of the evidence relied on by Tesla to support its motion for summary judgment. (Dkt.

8  No 38 at 6–7.)

9      In response, Tesla points to deposition testimony from Plaintiffs' own expert, Myles

10  Kitchen, who analyzed data from the Model X's event data recorder ("EDR") and authored an

11  expert report regarding the circumstances of the crash. (Dkt. No. 40 at 3.)  Mr. Kitchen's report

12  notes that from his review of the Carlog data, which is distinct from EDR data, the cause of the

13  accident "in my opinion . . . would appear to be a Pedal Misapplication of pressing the

14  accelerator pedal instead of the brake when attempting to fully stop in the parking spot." (Dkt.

15  No. 37 at 20.)  In his deposition testimony, Mr. Kitchen further confirms that, in his opinion, the

16  acceleration that resulted in Plaintiffs' accident "was initiated by the fact something or someone

17  applied the throttle to 100 percent." (Dkt No. 39 at 267.)  The EDR report, which Mr. Kitchen

18  confirmed is something he routinely relies on and, in fact, relied on in drawing his opinions in

19  this case (*see id.* at 290), also indicates that the accelerator pedal was pressed. (*See* Dkt. No. 41

20  at 34.)  And when specifically asked, Mr. Kitchen declined to opine that a defect caused the

21  acceleration. (Dkt. No. 39 at 267) ("Q. . . . and you're not going to tell the jury that that

22  acceleration that began was caused by a defect, are you?  A.  It was initiated by the fact

23  something or someone applied the throttle to 100 percent.").

24

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 36) - 5

Plaintiffs' evidence is not sufficient to raise a genuine issue of material fact that would preclude the Court from finding as a matter of law that Tesla is entitled to summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) (noting that the holding in *Scott* has been extended to other forms "of evidence capable of objectively disproving witness testimony.")

Mr. Djemil's testimony that he pressed on the brake and not the accelerator is clearly contradicted by the testimony of his own expert and the EDR data.[1] There is no other evidence supporting Mr. Djemil's testimony that he stepped on the brakes and a reasonable juror could not find in his favor. The Court agrees with Tesla that an average consumer would expect their car to accelerate if someone or something pressed on the accelerator pedal.[2] Accordingly, the Court finds that Tesla is entitled to summary judgment on Plaintiffs' SUA design defect theory.

---

[1] The Court also agrees with Tesla and with numerous other courts that analysis of the Model X's EDR data that was pulled from the vehicle after the accident is reliable and admissible evidence. *See, e.g.*, *Polanco v. United States*, No. 19-CV-1409 (LJL), 2020 WL 6504554, at *4 (S.D.N.Y. Nov. 5, 2020); *see also State v. Byard*, 2018 WL 2077324, at *4 (Del. Super. Ct. May 1, 2018), *as corrected* (May 3, 2018) (noting that "caselaw demonstrates that EDR evidence has been met with an overwhelming chorus of approval in jurisdictions across the country, without a single voice raised in dissent."); *Com. v. Zimmermann*, 873 N.E.2d 1215, 1221 (Mass. Ct. App. 2007) (affirming admissibility and reliability of EDR data).

[2] The Court also notes that Mr. Singer's statistical analysis is also not sufficient to create a genuine issue of material fact. "A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991). Plaintiffs have not made such a showing. Mr. Singer's analysis does not opine on whether SUA caused the accident at issue in this case. Nor does Mr. Singer declare that the current incident is similar to the SUA incidents analyzed in his report. *See C.O. v. Coleman Co.*, No. C06-1779 TSZ, 2008 WL 820066, at *1 (W.D. Wash. Mar. 25, 2008) ("Plaintiffs' experts . . . have presented

b. <u>Collision Mitigation Features Theory</u>

The Court also agrees with Tesla that Plaintiffs have failed to offer evidence to establish their injuries were proximately caused by the alleged failure of the Model X's various collision mitigation features.

An essential element of a design defect claim is that the plaintiff's injuries are proximately caused by the defective product. *See Fabrique v. Choice Hotels Int'l, Inc.*, 183 P.3d 1118, 1121 (Wash. Ct. App. 2008). "A proximate cause of an injury is defined as a cause that, in a direct sequence, unbroken by any new, independent cause, produces the injury complained of and without which the injury would not have occurred." *Id.*

Plaintiffs' experts have opined on three primary collision mitigation features: "Pedal Misapplication Mitigation, Automatic Emergency Braking, and Obstacle Aware Acceleration." (*See* Dkt. No. 38 at 12–13.) Mr. Kitchen's expert report, for example, indicates that the aforementioned features did not engage before the Model X collided with the Subway. (*See* Dkt. No. 39 at 245–47.) However, when asked whether the activation of either Pedal Misapplication Mitigation ("PMM") or Obstacle Aware Acceleration ("OAA") would have stopped Plaintiffs' vehicle from hitting the Subway, Mr. Kitchen testified the Model X was "going to run into the building, but if -- if brakes are being applied, then it's going to, you know, be at lower G levels and, you know, be mitigated as it -- as it describes what it does.· It mitigates impact into an obstacle." (*Id.* at 296.) Plaintiffs' expert also noted that the conditions for the activation of any of the collision mitigation features were present in only "this one second, 1,000 millisecond interval" just before the Model X collided with the Subway. (*Id.* at 314.) And he was unable to

---

declarations concerning the similarities between the previous and the subject incidents, which are sufficient to satisfy the 'substantially similar' test.").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 36) - 7

offer any opinion as to the reduction in speed or the reduction in gravity force Plaintiffs would have felt in the one second, 1,000 millisecond interval had any of the collision mitigation features activated.  (*Id*. at 296) ("I haven't done that analysis, no.  I don't know.").

Plaintiffs ultimately put forward no evidence that indicates that the failure of these collision mitigation features were the proximate cause of their injuries.  There is no deposition testimony indicating the failure of these features caused Plaintiffs' injuries.  Plaintiffs' experts, similarly, do not opine the failure of these features was the proximate cause of Plaintiffs' injuries.  The Court therefore finds that Tesla is entitled to summary judgment on Plaintiffs' Collision Mitigation Features theory.

## IV   CONCLUSION

Accordingly, and having considered Tesla's motion (Dkt. No. 36), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Tesla's motion for summary judgment is GRANTED.

1. Plaintiffs' claims against Tesla are DISMISSED with prejudice.
2. Plaintiffs' claims against the unnamed Doe defendants are DISMISSED without prejudice.
3. Tesla's motion to exclude expert opinions (Dkt. No. 42) is DISMISSED as moot.

Dated this 22nd day of March, 2023.

David G. Estudillo
United States District Judge